UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

| | |
|---|---|
| TEON E. HALL,<br><br>Petitioner,<br><br>v.<br><br>WARDEN CHRISTOPHER SMITH,<br><br>Respondent. | Civil Action No. TDC-21-0854 |

**MEMORANDUM OPINION**

Self-represented Petitioner Teon E. Hall, a state inmate currently incarcerated at the Maryland Correctional Institution in Jessup, Maryland, has filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 collaterally attacking his 2006 state convictions and sentences in the Circuit Court for Baltimore City, Maryland ("the Circuit Court") for second-degree murder, first-degree assault, and related firearms offenses. The Petition is fully briefed. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2254 Cases in the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Petition will be DENIED.

**BACKGROUND**

**I.    Convictions and Sentences**

On June 16, 2006, a jury in the Circuit Court for Baltimore City ("the trial court") found Hall guilty of second-degree murder, first-degree assault, two counts of use of a handgun in the commission of a crime of violence, and two counts of wearing, carrying, or transporting a handgun. The facts presented at trial included that on February 18, 2005, Hall shot and killed Craig Morris

and shot and wounded Steven Kendall outside of a nightclub known as the Ritz located in Baltimore, Maryland. Several hours prior to the shootings, Hall, Jarrod Pinkney, and Shawn McMillan went to the nightclub. During that same time frame, several of McMillan's friends and acquaintances, including Floyd Bui, Hung Lai, and Joseph Harn, also arrived at the nightclub. While some of this group was outside the nightclub, a second group arrived, consisting of Morris, Kendall, and Ryan McGowan. After members of the two groups spoke to each other, there was a verbal and then a physical altercation. McMillan then retrieved from his vehicle a gun which belonged to Pinkney. At some point, Hall took the gun from McMillan and fired into the group of people, striking Morris and Kendall. Morris was killed.

At that point, Hall and others left the scene in McMillan's vehicle. Police officers later stopped the vehicle, conducted a search, and recovered a handgun. Forensic tests revealed that Hall and McMillan had gunshot residue on their hands, that Hall's fingerprint was on a magazine from the gun, and that bullets recovered from Kendall were fired from that handgun. In addition, four witnesses at trial identified Hall as the shooter, either by name or by description.

The evidence presented at trial also demonstrated that Hall had consumed alcohol prior to the shooting. McMillan testified that Hall had been drinking. Joshua Lindsey described Hall as "intoxicated." 6/12/06 Trial Tr. at 49-50, ECF No. 6-4. When asked about Hall's condition, Pinkney testified that "he was out there" and "had a bottle . . . to himself." *Id.* at 62. Bonnie Fitzgerald testified that Hall was drunk, slurred his speech, and made rude comments to her.

On August 18, 2006, the trial court sentenced Hall to 30 years of imprisonment on the second-degree murder charge; 25 years of imprisonment on the first-degree assault charge; and 20 years of imprisonment on each of the two charges for use of a handgun in the commission of a crime of violence, with the additional firearms charges merging with the other charges. The court

ordered all sentences to run consecutively, for a total sentence of 95 years of imprisonment. On December 7, 2015, the trial court granted a Motion for Modification of the Sentence and modified Hall's sentence by ordering that the use of a handgun in a crime of violence sentences run concurrently with the corresponding sentences on second-degree murder and first-degree assault.

## II.   Direct Appeal

Hall filed a direct appeal to the Maryland Court of Special Appeals, now the Appellate Court of Maryland ("the Maryland Appellate Court"), and asserted two claimed errors: (1) the trial court erred when it denied a motion to strike the testimony of the prosecution's two gunshot residue witnesses; and (2) the trial court committed plain error with its jury instruction on reasonable doubt. On January 22, 2008, the Maryland Appellate Court issued an opinion affirming the convictions and sentences. On April 11, 2008, the Court of Appeals of Maryland, now the Supreme Court of Maryland ("the Maryland Supreme Court"), denied Hall's Petition for a Writ of Certiorari.

## III.   State Post-Conviction Proceedings

On August 12, 2016, Hall filed with the Circuit Court a self-represented Petition for Post-Conviction Relief ("the State Petition") pursuant to the Maryland Uniform Postconviction Procedure Act, Md. Code Ann., Crim. Proc. §§ 7–101 to 7–301 (West 2018). As amended, the State Petition asserted that Hall's trial counsel provided ineffective assistance of counsel by: (1) failing to object to a prospective juror's non-disclosure of relevant information during voir dire; (2) failing to object to the omission of a jury instruction for voluntary intoxication as a defense to second-degree murder and first-degree assault; and (3) failing to object to the jury instruction on reasonable doubt. On April 20, 2020, the Circuit Court ("the state post-conviction court") denied the State Petition.

On May 15, 2020, Hall filed a self-represented Application for Leave to Appeal from the Denial of Post-Conviction Relief. On September 9, 2020, the Maryland Appellate Court summarily denied Hall's Application. Subsequently, the Maryland Supreme Court both dismissed a Petition for a Writ of Certiorari filed by Hall and denied his Motion for Reconsideration. On March 21, 2021, Hall filed in this Court the present Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.

## DISCUSSION

In the Petition, Hall asserts a single claim: that his trial counsel provided ineffective assistance of counsel by failing to request a jury instruction on voluntary intoxication as a defense to the first-degree assault charge. On November 1, 2021, Respondent filed an Answer contending that the Petition fails on the merits because the state post-conviction court's denial of this argument was not based on an unreasonable application of clearly established federal law or an unreasonable determination of fact, and in any event, trial counsel's actions did not constitute ineffective assistance of counsel under the governing legal standard.

**I.     Legal Standard**

A federal petition for a writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a) (2018). The federal habeas statute sets forth a highly deferential standard for evaluating state court rulings, under which state court decisions are to "be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005); *see Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997). A federal court may not grant a writ of habeas corpus unless the state court's adjudication on the merits (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). A state court adjudication is contrary to clearly established federal law under § 2254(d) when the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law"; or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (citation omitted). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"[A] federal habeas court may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S 766, 773 (2010) (quoting *Williams*, 529 U.S. at 411). The state court's application of federal law must be "objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409). Furthermore, under § 2254(d)(2), "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010) (citation omitted). The fact that "reasonable minds reviewing the record might disagree about the finding in question" is not enough to deem a state court's factual determination unreasonable. *Id.*

## II. Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." U.S. Const. amend. VI. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that to prevail on a claim of ineffective assistance of counsel, a petitioner must establish two

prongs: deficient performance and prejudice. *Id.* at 692. First, the petitioner must show that counsel's performance was deficient in that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Deficiency exists when "counsel's representation fell below an objective standard of reasonableness" under "prevailing professional norms." *Id.* at 688; *see Wiggins v. Smith*, 539 U.S. 510, 521 (2003). "Judicial scrutiny of counsel's performance must be highly deferential" and apply "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.*

Second, the petitioner must show prejudice in that the deficient performance by counsel consisted of errors that "were so serious as to deprive the defendant of a fair trial" whose result was reliable. *Id.* at 687. To establish such prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." *Id.* A petitioner is not entitled to post-conviction relief based on prejudice where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

### III. Voluntary Intoxication Jury Instruction

Hall's sole argument in the Petition is that his trial counsel was ineffective for failing to request a jury instruction on voluntary intoxication in relation to the first-degree assault charge.

After the defense rested on June 15, 2006, the trial court instructed the jury as follows on the applicable law with respect to the charge of first-degree murder relating to Morris:

> You have heard evidence that the defendant acted while intoxicated by alcohol. Voluntary intoxication may be a defense to first-degree murder; however, it is not a defense to second-degree murder because that charge does not require premeditation and deliberation.
>
> If the defendant was so intoxicated at the time of the homicide that he was unable to have acted deliberately or with premeditation, then he cannot be guilty of first-degree murder, although he could be guilty of second-degree murder.
>
> A person can be drinking and even be intoxicated, but still have the necessary mental faculties to act deliberately and with premeditation. In order to convict the defendant of first-degree murder, the State must prove beyond a reasonable doubt that the degree of intoxication did not prevent the defendant from acting deliberately and with premeditation.

6/15/06 Trial Tr. at 14, ECF No. 6-7.

Hall argues that his trial counsel was ineffective because the above instruction was not repeated when the jury was instructed on the first-degree assault charge relating to Kendall. In rejecting this argument, the state post-conviction court relied on *Bazzle v. State*, 45 A.3d 166 (Md. 2012), in which the court held that a voluntary intoxication instruction is available only if the defendant can identify "some evidence" that "would allow a jury to rationally conclude" that his level of intoxication "made him incapable" of forming the intent necessary to constitute the crime. *Id.* at 174. "Mere drunkenness does not equate to the level of intoxication necessary to generate" this jury instruction. *Id.* Applying this standard, the *Bazzle* court held that the evidence did not support the granting of the jury instruction, even though the facts showed that the defendant was "drunk and exhibited the typical characteristics of being drunk," had an elevated blood alcohol level at twice the legal driving limit, was "almost about to pass out," whether as a result of intoxication, being stabbed, or both, and had acted in a senseless manner when he carjacked the victim. *Id.* at 175-76. The state post-conviction court found that the evidence relating to Hall's

intoxication was more limited than in *Bazzle* and thus showed only that he was intoxicated, not that he was unable to form the specific intent necessary to commit the charged crimes, such that it was not deficient performance to fail to request such an instruction.

Where the record evidence on intoxication was generally limited to witness testimony that Hall had been drinking, appeared intoxicated, and had slurred speech, the state post-conviction court's finding that the evidence of intoxication was stronger in *Bazzle* was not unreasonable. In turn, the state post-conviction court's conclusion that pursuant to *Bazzle*, the voluntary intoxication instruction was not warranted under Maryland law, such that the failure to request it was not deficient performance under *Strickland*, was not an "unreasonable application" of "clearly established Federal law. as determined by the United States Supreme Court" in *Strickland.* 28 U.S.C. § 2254(d). Thus, under the applicable legal standard, the Court will not grant the Petition.

In so ruling, the Court does not, implicitly or explicitly, find that the voluntary intoxication instruction was actually warranted for the first-degree assault charge. As argued by Respondent for the first time in its Answer to the Petition, under Maryland law, the crime of first-degree assault has at least two different forms, or "modalities." *See Dixon v. State*, 772 A.2d 283, 300-01 (Md. 2001); *Marlin v. State*, 993 A.2d 1141, 1156 (Md. Ct. Spec. App. 2010). Under the first, a "person may not intentionally cause or attempt to cause serious physical injury to another." Md. Code Ann., Crim. Law § 3–202(b)(1) (West 2021); *see Dixon*, 772 A.2d at 300. Under the second, a "person may not commit an assault with a firearm." Md. Code Ann., Crim. Law § 3–202(b)(2); *see Dixon*, 772 A.2d at 300. The first modality is a specific intent crime. *Dixon*, 772 A.2d at 301.

At trial, however, the trial court instructed the jury on the second modality when it stated that the elements of first-degree assault were that (1) the defendant "caused offensive physical contact with physical harm to the victim"; (2) the "contact was a result of an intentional or reckless
8

act of [the] defendant that was not accidental"; (3) the "contact was not consented to by the victim or was not legally justified"; and (4) the defendant "used a firearm to commit assault." 6/15/06 Trial Tr. at 17. This form of first-degree assault is a general intent crime, not a specific intent crime, because it is akin to an intentional battery or an attempted battery, both of which require a "general intent on the part of the perpetrator to hit the victim." *Marlin*, 993 A.2d at 1160. A voluntary intoxication instruction, however, is warranted only for a specific intent crime. *See Harris v. State*, 728 A.2d 180, 190 (Md. 1999) (holding that the trial court properly denied a voluntary intoxication instruction on a carjacking charge because "carjacking is not a specific intent crime," so "voluntary intoxication is not a defense"). Thus, although not necessary to the Court's ruling, the Court finds that such an instruction, even if requested by trial counsel, would not have been proper under Maryland law, such that the failure to request it would not constitute ineffective assistance of counsel.

## IV.    Certificate of Appealability

A petitioner may not appeal the dismissal or denial of a federal habeas petition without first receiving a certificate of appealability. 28 U.S.C. § 2253(c)(1). The Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). When a district court rejects a claim on the merits, a petitioner satisfies the standard by demonstrating that "jurists of reason could disagree with the district court's resolution of [the] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773-74 (2017) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)).

Hall has not made the requisite showing. Accordingly, the Court declines to issue a certificate of appealability. Hall may request that the United States Court of Appeals for the Fourth Circuit issue such a certificate. *See* Fed. R. App. P. 22(b).

## CONCLUSION

For the foregoing reasons, the Petition will be DENIED. The Court declines to issue a certificate of appealability. A separate Order shall issue.

Date: January 22, 2024

THEODORE D. CHUANG
United States District Judge